IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 10-cr-00311-DME-1

UNITED STATES OF AMERICA,

       Plaintiff,

v.

LESTER EUGENE FOWLER,

       Defendant.

---

**ORDER DENYING PRETRIAL MOTIONS**

---

This matter comes before the Court on Defendant Lester Fowler's five pretrial motions: 1) and 2) for change of venue (Docs. 33 and 47); 3) to suppress identification evidence (Doc. 20); 4) to suppress evidence discovered through the execution of a search warrant for Fowler's 2001 Ford Expedition (Doc. 31); and 5) to suppress evidence discovered through the execution of a search warrant on a residence located at 3265 Krameria in Denver (Doc. 32). Upon consideration of these motions and after hearing from the parties during a hearing conducted on July 27, 2010, the Court DENIES all five motions, for the following reasons:

**I. Motions for Change of Venue (Docs. 33 and 47)**

The United States charged Fowler with committing a bank robbery in Denver. (Doc. 10.) Ordinarily the "government must prosecute an offense in the district where the offense was committed." Fed. R. Crim. P. 18. Fowler, however, asks the Court to

1

transfer his case "to another district outside the Denver metropolitan area" because "the pretrial publicity surrounding this case is so great and prejudicial that Mr. Fowler cannot obtain a fair and impartial trial in the District of Colorado." (Docs. 33 at 1, 47 at 1.) See Skilling v. United States, 130 S. Ct. 2896, 2912-13 (2010) (recognizing that Sixth Amendment right to trial by an impartial jury permits transfer of trial "at the defendant's request if extraordinary local prejudice will prevent a fair trial—a basic requirement of due process") (quotation omitted).

Fowler makes this request pursuant to Fed. R. Crim. P. 21(a), which provides:

Upon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there.

The determination of whether "so great a prejudice against the defendant" exists in the Denver metropolitan area to warrant a change of venue "turns on a fact question" regarding "the extent of publicity and the proximity in time to the trial." United States v. Hueftle, 687 F.2d 1305, 1310 (10th Cir. 1982) (en banc).

In support of his motions for change of venue, however, Fowler only points to seven brief media reports of the charged offense and his May 28, 2010 arrest. (Docs. 33 ex. A-C; 47 ex. A-D.) All of the articles appear to have been published in late May or early June 2010. Two preceded Fowler's arrest by less than one week (Doc. 47 ex. A, D); the five others appear to have been published contemporaneously with Fowler's arrest (Doc. 33 A-C; 47 ex. B, C). Fowler fails to point to any more recent publicity. With Fowler's trial currently set for September 27, 2010, these articles from several

2

months ago are unlikely to prejudice the prospective jury pool. See Goss v. Nelson, 439 F.3d 621, 633 (10th Cir. 2006) (noting, in habeas case, that "[t]he passage of time before trial . . . also diminishes the presumptive impact of publicity occurring at the time the crime was committed").

Substantively, these seven articles are quite brief. Most of them indicate that Fowler was suspected of being the "Super Freak Bandit," who authorities believed had committed a total of five bank robberies, including the one charged in this case. The bank robber was dubbed the "Super Freak Bandit" because, on at least one of these occasions, the robber wore a wig with long braids, reminiscent of the 1980s hairstyle of singer Rick James, who made the song "Super Freak" popular in 1981. (Doc. 33 ex. C.) One article also gave Fowler's previous criminal history. (Doc. 47 ex. B.)

Without more, however, these articles are insufficient to establish that "so great a prejudice against [Fowler] exists in th[is] district that [he] cannot obtain a fair and impartial trial" here. Fed. R. Crim. P. 21(a); see United States v. Butler, 446 F.2d 975, 976-77 (10th Cir. 1971) (holding trial court did not err in denying motion for change of venue based upon two newspaper articles published about the case). "Pre-trial publicity in topical criminal cases is inevitable. The publicity impacts defendant's rights only when it dictates the community's opinion as to guilt or innocence." United States v. Abello-Silva, 948 F.2d 1168, 1177 (10th Cir. 1991), overruling on other grounds recognized in United States v. Martinez, 78 Fed. App'x 679, 685 (10th Cir. Oct. 17, 2003) (unpublished). Fowler has not established that this has occurred in his case. Cf. id. at 1177-78 (determining that defendant had failed to establish that change of venue was

3

warranted, despite pointing out thirty-one news articles published about the case, averaging five in each of the months preceding trial).

The Court's conclusion is bolstered by the size of the community where this crime is alleged to have occurred. Denver is a big enough community to provide a large and diverse jury pool, making it less likely that this amount of pretrial publicity will prevent the selection of an impartial jury. See Skilling, 130 S. Ct. at 2915 (comparing a community of 150,000 people, where prejudice was more likely, with the city of Houston, the fourth largest city in the United States with a population of 4.5 million, where prejudice was unlikely).

The Court therefore denies Fowler's pretrial motions for change of venue. (Docs. 33, 47.) This ruling is, of course, without prejudice to the renewal of the motion should voir dire suggest it may, in fact, be difficult to seat an impartial jury in Fowler's case, in light of this pretrial publicity. See United States v. Pedrazza, 27 F.3d 1515, 1525 (10th Cir. 1994) ("Whether a jury harbors prejudice related to pretrial publicity is best determined during voir dire examination.").

**II. Motion to suppress identification evidence (Doc. 20)**

Next Fowler moves for the suppression of several witnesses' pretrial identification of him as the bank robber. (Doc. 20.) These witnesses purportedly identified Fowler from a six-picture photo array as the man who committed the charged robbery. Because Fowler believes that the photo array was impermissibly suggestive, he seeks to exclude from trial 1) "all testimony by prosecution witnesses relating to any identification made as a result of any photographic line-up including, but not limited to, the identifications

4

made by Alisa Roberts, Sandra Cochran, and Ryan Buchanan," 2) "all testimonial evidence at trial which relates to any identification of the defendant made at that photographic line-up," and 3) any in-court identification of Fowler. (Id. at 1-2.) In support of this motion to suppress, Fowler makes the following arguments. (Doc. 20 ¶¶ 1-3.)

### A. Whether the photographic array was impermissibly suggestive

In considering the admissibility of evidence from a pretrial identification that the defendant contends was unduly suggestive, the court must consider two things: 1) whether the identification procedure was impermissibly suggestive, and, 2) if so, whether the identification was, nevertheless, reliable independent of the suggestive procedure. See English v. Cody, 241 F.3d 1279, 1283 (2001). "Stated differently, [the court must] evaluate the reliability of the identification under the totality of the circumstances to determine whether the suggestive [identification procedure] created a substantial likelihood of irreparable misidentification." United States v. Bredy, 209 F.3d 1193, 1195 (10th Cir. 2000) (quotations omitted).

In his written motion, Fowler asserted, without any further elaboration, that the photo array police used in this case was "so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." (Doc. 20 ¶ 1.) At the hearing before the Court, however, defense counsel clarified that his only argument in support of this suppression motion is that the six photos comprising the array impermissibly suggested that Fowler was the bank robber. Fowler did not further elaborate on that point, however.

5

Fowler bears the initial burden of proving that the identification procedure was impermissibly suggestive. See English, 241 F.3d at 1283 (citing United States v. Wade, 388 U.S. 218, 240 n.31 (1967)); see also United States v. Clarkson, 551 F.3d 1196, 1200 (10th Cir. 2009).

To meet his burden, Fowler requested a pretrial hearing on this motion (Doc. 20 ¶ 4), which this Court held on Tuesday, July 27, 2010. During that hearing, defense counsel conceded that, other than presenting the photo array to the Court, he did not have any further evidence to present in support of this motion.

The parties, therefore, submitted the challenged photo array to the Court. After reviewing the array, the Court finds that the six photos used to compose the array are all similar to the photo of Fowler that authorities included in the array. All six men are African Americans, approximately the same age, build, and each with some facial hair. The background of the six photos is identical. Cf. Johnston v. Makowski, 823 F.2d 387, 391 (10th Cir. 1987) (holding photo array was impermissibly suggestive where the defendant's photo "obviously was newly taken, whereas the other pictures were visibly older"). Viewing the six photos in an array, there is nothing to suggest to a witness that he or she should pick the fourth man pictured, Fowler, as the bank robber. Cf. United States v. Wiseman, 172 F.3d 1196, 1208-09 (10th Cir. 1999) (holding six-photo array was too suggestive where defendant was the only man pictured who had "very prominent dark circles under his eyes and with an extremely unnatural, chalk-white pallor," which "undoubtedly" would have drawn viewer's attention to the defendant's photo); Grubbs v. Hannigan, 982 F.2d 1483, 1489-90 (10th Cir. 1993) (holding, in habeas proceeding, six-

picture photo array was impermissibly suggestive, where four of the six "had facial characteristics noticeably dissimilar from those of the" defendant, and those differences were "striking").

Fowler makes no more specific argument that the photo array is impermissibly suggestive and the Court, after viewing the array, determines it is not impermissibly suggestive. Cf. United States v. Flores, 149 F.3d 1272, 1278 (10th Cir. 1998) (holding photo array using pictures of nine "Hispanic males of roughly similar build, height, age, and hairstyles" was not impermissibly suggestive, even though the defendant was the only one with "distinctive eyes" and a goatee); United States v. Sanchez, 24 F.3d 1259, 1261-63 (10th Cir. 1994) (rejecting, in bank robbery prosecution, argument that six-picture photo array was impermissibly suggestive even though the defendant was the only bank customer pictured and even though he was the only subject with his eyes closed).

### B. Whether the photo array procedures were unduly prejudicial, requiring exclusion of any <u>in</u>-court identification of Fowler by the same witnesses

In his written motion, Fowler makes a second argument, asserting that the

> photographic line-up was so unnecessarily suggestive that it violated [his] right to due process under the Fifth Amendment . . . and therefore requires exclusion of [not only] any identification evidence obtained as a result of the photographic line-up [but also] the anticipated in-court identification of witnesses who viewed and identified the defendant at the photographic line-up.

(Doc. 20 ¶ 1.) See generally United States v. Brown, 200 F.3d 700, 707 (10th Cir. 1999) (addressing a similar claim). Because the Court has decided that the composition of the photo array was not impermissibly suggestive, however, this argument fails as well. See Smith, 156 F.3d at 1052; see also Brown, 200 F.3d at 707 (rejecting argument that in-

7

court identification should be suppressed in part because the defendant failed to establish that pretrial identification was unnecessarily suggestive).

### C. The fruit of an unlawful arrest

Lastly, Fowler argues in his written suppression motion, without any further elaboration, that "[t]he identification obtained as a result of the photographic line-up is the fruit of a prior unlawful detention, arrest and search of" Fowler. (Doc. 20 ¶ 2.) See United States v. Allen, 235 F.3d 482, 490 (10th Cir. 2000) (addressing claim that pretrial identification was inadmissible because it was the product of an unlawful arrest). Fowler, however, fails to clarify this argument any further. Importantly, he fails to identify the prior unlawful detention, arrest or search to which he refers. In light of that, this argument is too vague to warrant relief.

### D. Conclusion regarding Fowler's motion to suppress identification evidence

For the foregoing reason, the Court denies Fowler's motion to suppress identification evidence in all respects.

## III. Motions to suppress evidence discovered through the execution of search warrants for Fowler's Ford Expedition (Doc. 31) and the residence at 3265 Krameria (Doc. 32)

Officers obtained two warrants, one to search a 2001 black Ford Expedition registered to Fowler and his former wife, and another warrant to search a residence located at 3265 Krameria in Denver. (Docs. 31 at 1-2, 32 at 1-2.) Fowler seeks to suppress evidence seized during the execution of these search warrants, arguing, among other things, that neither warrant was supported by probable cause. (Id. at 2-4.) Officers used essentially the same affidavit to support both search warrants.

It is Fowler's burden to prove that the search warrants were not supported by probable cause.  See United States v. Koerth, 312 F.3d 862, 868 (7th Cir. 2002); United States v. Munoz, 150 F.3d 401,411 n.7 (5th Cir. 1998); cf. United States v. Tisdale, 248 F.3d 964, 973 (10th Cir. 2001) (holding that defendant who alleged search warrant was supported by affidavit containing false information bore burden of proving affidavit's falsity or affiant's reckless disregard for the truth).  Fowler must make this showing by a preponderance of the evidence.  Cf. Tisdale, 248 F.3d at 973 (requiring defendant to show by a preponderance of the evidence that affidavit supporting search warrant contained false information or the affiant asserted facts in reckless disregard for the truth).  See generally United States v. Matlock, 415 U.S. 164, 177 n.14 (1974) (noting that "the controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence").  The parties agree that the Court can determine whether the search warrants were supported by probable cause by reviewing the affidavit submitted to the magistrate judge who issued the warrants.

Courts "review the issuing judge's finding of probable cause with great deference," looking "to ensure that the judge had a substantial basis for concluding that the affidavit in support of the warrant established probable cause."  United States v. Burkhart, 602 F.3d 1202, 1205 (10th Cir. 2010).  "'The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  Id. (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)) (alteration omitted).

9

In this case, the affidavit submitted in support of the two search warrants challenged here meets this probable cause requirement. The affidavit first sets forth why officers believed that Fowler is the bank robber: Officers released to the media surveillance photos of the robber taken during the charged bank robbery. After the media released these photos to the public, a federal prison guard who knew Fowler from a prior incarceration and an acquaintance of Fowler's from church identified the man in the surveillance photos as Fowler. Officers then obtained a photo of Fowler from the Department of Motor Vehicles and included it in a photo array shown to two of the victims of the charged robbery. Those two victims also identified Fowler as the robber. In addition, when police spoke to Fowler's former wife, she indicated that Fowler's daughter had commented to her that the "Super Freak Bandit" looked like Fowler. And when Fowler's former wife saw the surveillance photos, she, too, identified Fowler as the robber.

The affidavit also indicated why officers believed that the same man who had committed the charged offense might have committed a total of five similar bank robberies: The five robberies were similar. During each, a lone robber entered the bank, and shouted at bank employees, ordering them to put their money into a black mesh bag the robber provided. In each case, the robber was described generally as an African-American man, between thirty-five and forty-five years of age, approximately 5'10 to 6'2" tall, 180-200 pounds, medium build, wearing dark clothes and usually a hat, wig or sweatshirt hood covering his head. On two of these occasions, the robber left the bank in a sports utility vehicle, perhaps a Ford Explorer or a Ford Expedition. Fowler has a Ford

Expedition, which is registered to him and his former wife. The former wife told police that Fowler had been driving that vehicle.

The affidavit then set forth how Fowler was linked to the residence on Krameria: His former wife gave officers Fowler's cell phone number. Officers then obtained a court order authorizing the use of a pen register and "trap and trace device," which indicated that Fowler was using his cell phone from the Krameria address. Officers also located Fowler's Ford Expedition parked behind the home at that same address. Although the owner of the Krameria residence indicated that Shelly Oliver lived there, a neighbor identified Fowler as also living there and as having parked the Ford Exposition behind the residence. Further, according to the neighbor, he had seen Fowler with Oliver over the past several months.

The information in this affidavit was sufficient for a magistrate judge to determine that, "'given all the circumstances set forth in the affidavit before him there is a fair probability that contraband or evidence of a crime w[ould] be found in'" Fowler's Ford Expedition and the residence on Krameria. Burkhart, 602 F.3d at 1205 (quoting Illinois v. Gates, 462 U.S. at 238) (alteration omitted). The affidavit, thus, provided probable cause to support the magistrate judge's issuance of the two challenged search warrants. The Court, therefore, denies Fowler's motions to suppress the evidence discovered during the execution of these search warrants.

## IV. Conclusion

For the foregoing reasons, the Court DENIES Fowler's five pretrial motions, Documents 20, 31, 32, 33 and 47.

DATED: August  3rd , 2010.

                                                            BY THE COURT:

                                                            *s/ David M. Ebel*

                                                            David M. Ebel
                                                           United States Circuit Judge